UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LANCE TAYLOR,

        Plaintiff,                Case No. 1:20-cv-180

v.                                    Honorable Robert J. Jonker

K. BREGE et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Brege, Melton, and Lobdell. The Court also will dismiss for failure to state a claim Plaintiff's due process claims against Defendant Hermann.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LRF officials: Resident Unit Manager K. Brege; Prisoner Counselor D. Melton; Correctional Officer Unknown Hermann; and Psychologist Unknown Lobdell.

Plaintiff alleges that he transferred into LRF on October 8, 2019. When he arrived, he was placed in Cell 44 with Prisoner Love. The following day, Prisoner Love refused to return to the cell, indicating "his opposition about having a cellmate due to prior issues with former cellmates. Love wanted a single cell." (Compl., ECF No. 1-1, ECF No. 1, PageID.4.) Love eventually entered the cell, at which time, he began to make verbal threats to kill Plaintiff and himself.

Prisoner Love continued to repeat his verbal threats over the coming days. A few days later, Plaintiff saw Defendant Love write a health care kite that stated, "I'm going to kill my bunky then myself." (*Id.*, PageID.6.) On October 12, 2019, Plaintiff had a visit with a psychologist, Defendant Lobdell. Plaintiff advised Defendant Lobdell that he did not feel safe being locked in the same cell with Prisoner Love. Defendant Lobdell allegedly told Plaintiff that she would inform Defendant Brege and ask that Plaintiff be moved as soon as possible.

Plaintiff remained in Cell 44 with Prisoner Love until October 25, 2019. Defendant Love allegedly continued to threaten to kill Plaintiff and then himself unless officials moved Love to a single cell. Plaintiff alleges that he sent kites to Defendants Brege and Melton during this period.

2

On October 25, both Plaintiff and Prisoner Love were moved to Cell 82. Before actually moving into his cell, Plaintiff told Defendant Hermann that he did not feel safe locking in the new cell with Prisoner Love, explaining that Love continuously threatened to kill Plaintiff and himself. Defendant Hermann ignored Plaintiff and gave him a direct order to either enter the cell with Love or face disciplinary action and segregation. Plaintiff complied with the order and entered the cell.

The same day Plaintiff and Love moved to Cell 82, Love showed Plaintiff a prison-made knife or shank that Love had fashioned from a chair leg. Love told Plaintiff that he would use the knife to kill Plaintiff, after he had strangled him. Love placed the knife in Plaintiff's area of control. Plaintiff promptly submitted an urgent healthcare request to see his mental health provider. In the request, Plaintiff explained that Prisoner Love had placed the knife in Plaintiff's area of control and that Plaintiff was afraid to remain in the cell because of Love's past threats and the existence of the weapon. (*See* Health Care Request, ECF No. 1-1, PageID.27.) The following day, the cell was searched by two officials who are not Defendants in the action. The officials found a 6½ inch sharpened plastic knife in Plaintiff's area of control, in the precise location described by Plaintiff in his health care request.

Plaintiff was issued a Class-1 major misconduct ticket for possessing a weapon. (Misconduct Report, ECF No. 1-1, PageID.25.) Following an investigation and based on Plaintiff's story, his health care request giving the exact location of the weapon, and the responses by officials to interrogatories, the hearing officer found Plaintiff not guilty of the charge. (Misconduct Hr'g Report, ECF No. 1-1, PageID.28.)

Plaintiff contends that Defendants were all deliberately indifferent to his serious risk of harm from Prisoner Love, in violation of the Eighth Amendment. Plaintiff also alleges that

3

Defendants deprived him of his right to due process. He seeks compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Brege, other than to state that he sent two kites to Defendant Brege, one on approximately October 13, 2019, shortly after Plaintiff arrived at the facility, and one on October 25, 2019, the day Plaintiff was transferred to Cell 82, but before he had been shown the knife. (Brege Kite II, ECF No. 1-1, PageID.33; Melton Kite I, ECF No. 1-1, PageID.24 (referencing first kite sent to Brege, which is not attached to the complaint).) Defendant Brege allegedly did not respond to either kite and did not ensure that Plaintiff was moved. With respect to Defendant Melton, Plaintiff alleges that he sent two kites, one on October 13, 2019, four days after Plaintiff was first placed in a cell with Love, and one that was undated, but apparently was sent sometime after Plaintiff had reported the knife and his cell had been searched. (Melton Kite I, ECF No. 1-1, PageID.24; Melton Kite II, ECF No. 1-1, PageID.23 (undated, but referencing dates up to November 1, 2019).) Defendant Melton allegedly failed to move Plaintiff in response to the kites. Plaintiff also appears to suggest that Defendants Brege and Melton failed to supervise their subordinates or conduct an investigation in response to Plaintiff's kites.

To the extent that Plaintiff alleges that Defendants failed to supervise their subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

5

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As a result, to the extent that Plaintiff alleges that Defendants Brege and Melton failed to supervise their employees, Plaintiff fails to state a demonstrate that they engaged in active conduct that would subject them to liability under § 1983.

To the extent that Plaintiff alleges that Brege and Melton failed to respond to his kites, he also fails to state a claim. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or kite. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, he fails to state a claim against them.

**IV.    Due Process**

Plaintiff alleges that he was deprived of due process. Plaintiff's due process allegations are far from clear. He may intend to allege that he was placed and kept in a cell with Prisoner Love in an arbitrary fashion, in violation of his right to procedural due process. Alternatively, Plaintiff may intend to assert that Defendants deprived him of procedural due process by allowing him to be charged with a Class-I misconduct, despite the fact that he had reported to officials that his cellmate had placed the knife in the area in which it was found. Plaintiff may also intend to allege that Defendants deprived him of procedural due process by not responding to his kites and not properly handling his grievances. Finally, Plaintiff may intend to

allege that Defendants deprived him of his right to substantive due process by keeping him in a dangerous cell placement.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification, much less to be placed in any particular cell. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Under these authorities, Plaintiff clearly has no due process right to be placed in a particular cell. As a result, he is not entitled to challenge his placement in a particular cell on the basis that it was arbitrary under the Due Process Clause.

To the extent that Plaintiff alleges that Defendants did not properly handle his kites or grievances, he also fails to state a due process claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance

procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Further, to the extent that Plaintiff argues that he should not have been charged with a misconduct that could have resulted in severe sanctions and possible prosecution, he fails to state a due process claim. First, Plaintiff makes no allegation that any Defendant in this action was involved in the issuance of the misconduct ticket. Second, Plaintiff's major misconduct charge could have affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he either faced or suffered a "significant and atypical deprivation." Although Plaintiff could have been placed in punitive segregation for 10 days as a sanction for a guilty finding on the misconduct charge (*see* MDOC Policy Directive (PD) 03.03.105, Attach. D), placement in segregation "is the sort of confinement

9

that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff does not allege that he was placed in segregation for any period, and, under MDOC policy, he potentially faced only a 10-day period of punitive segregation, far less than the

30 days found insufficient in *Sandin*. Thus, Plaintiff's potential for confinement in segregation did not trigger a right to due process.

The same is true for the potential toplock or loss of privileges sanctions Plaintiff could have faced. (*See* PD 03.03.105, Attach. D (allowing maximum of 30 days of toplock (confinement to quarters) and 30 days of loss of privileges (described in PD 03.03.105, Attach. E)) on a Class I misconduct conviction. If Plaintiff's confinement in segregation would not implicate a protected liberty interest, it follows that the lesser sanctions of toplock or loss of privileges do not implicate such an interest.

Furthermore, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because it is clear that he received all the process due to him. In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.* at 563-69.

Plaintiff's allegations and the documents attached to his complaint indicate that he received all of the procedures specified in *Wolff*. He received a hearing and an opportunity to respond to the charges at a hearing before an impartial hearing officer on November 6, 2019. He solicited and obtained written answers in response to his interrogatories, which were presented at the hearing. The hearing officer issued a written decision in the misconduct hearing report, identifying the evidence that he used to support his decision. Indeed, after considering all of the evidence, the hearing officer found Plaintiff not guilty of the misconduct charge.

Plaintiff therefore fails to allege any defects in the process he received. Instead, his claim is that Defendants should not have allowed the charge to proceed because it was not supported by the evidence. However, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* them. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (emphasis in original). Thus, for all the foregoing reasons, Plaintiff does not state a procedural due process claim.

Plaintiff also may intend to assert a violation of his substantive due process rights under the Fourteenth Amendment. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis*

*v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

However, "[w]here a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning Defendants' alleged failures to protect him. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). As a consequence, Plaintiff's substantive due process claim must be dismissed.

For all these reasons, Plaintiff's due process claims will be dismissed for failure to state a claim.

V.   **Eighth Amendment**

Plaintiff alleges that Defendants Lobdell and Hermann, by ignoring his claims that Prisoner Love was threatening him, were deliberately indifferent to a serious risk to Plaintiff's personal safety, in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, a plaintiff must show that the defendant was deliberately indifferent to the plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). Deliberate indifference has two components. First, the deprivation "must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). On a failure-to-protect claim such as the instant case, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McMillian*, 503 U.S. 1, 5 (1992)). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994)

14

(holding that plaintiff has the burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety."). Second, Petitioner must demonstrate that Defendants knew of and disregarded an excessive risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 836.

With respect to Defendant Lobdell, Plaintiff spoke to Lobdell about his cellmate on a single occasion, during his psychological visit held on October 11, 2019. At that time, Plaintiff had been in the cell with Love for less than three days. Defendant Lobdell allegedly told Plaintiff that she would speak with Defendant Brege about Plaintiff's concerns.[1] Lobdell, however, was not a member of the custody staff, but instead was a mental health provider. As such, she was not responsible for Plaintiff's placement and at most could convey Plaintiff's concern.

Under these circumstances, Defendant Lobdell's alleged failure to notify custody staff about Prisoner Love's threats falls short of demonstrating deliberate indifference. Assuming Plaintiff's allegations to be true, Defendant Lobell told Plaintiff that she would inform Defendant Brege about Love's threats and Plaintiff's request to be moved. Thus, Lobdell did not disregard Plaintiff's concerns; she clearly advised Plaintiff that she took his concern seriously and intended to speak with someone. The fact that she subsequently neglected to do sounds in negligence, not deliberate indifference. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

---

[1] In response to Plaintiff's interrogatories issued in defense of the misconduct charge, Defendant Lobdell expressly denied that Plaintiff had told him that Prisoner Love was voicing homicidal/suicidal thinking. Instead, Lobdell stated that Plaintiff called Love a "bug," which is slang when referring to a prisoner who is mentally ill. *See* Prisonser Terminology, https://council.legislature.mi.gov/Ombudsman/PrisonTerminology. Lobdell further stated that he suspected that the issues were related to Plaintiff's gender-identity issues. Lobdell reported that he had told Plaintiff to contact his prisoner counselor or his resident unit manager and that, if they wanted to get ahold of Lobdell, he would speak with them about it. (Attach. to Compl., ECF No. 1-1, PageID.31.) At this juncture, however, the Court must accept Plaintiff's allegations as true.

With respect to Defendant Hermann, in contrast, the Court concludes that Plaintiff has alleged sufficient facts to create a reasonable inference that Defendant Hermann was both aware of Love's threats to kill Plaintiff and deliberately indifferent to that risk. Plaintiff alleges that he initially refused to enter Cell 82 with Defendant Love, telling Defendant Hermann that he was afraid of Love because Love had repeatedly threatened to kill him. Defendant Hermann, instead of engaging in any investigation or taking any action, threatened Plaintiff with a ticket for disobeying a direct order and assignment to segregation if Plaintiff did not immediately enter the cell with Love. As a consequence, Plaintiff has alleged facts sufficient to support his Eighth Amendment claim against Defendant Hermann.

Although Plaintiff's allegations may be sufficient to state an Eighth Amendment claim against Defendant Hermann, Plaintiff is not entitled to compensatory relief in this action. Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, any claim for compensatory damages necessarily is based on emotional injury and therefore is barred.

Nevertheless, § 1997e(e) does not bar Plaintiff from being awarded nominal and punitive damages. *See Thompson v. Carter*, 284 F.3d 411, 418 (6th Cir. 2002) (citing *Searles v. Van Bebber*, 251 F.3d 869, 879-80 (6th Cir. 2001)). As a consequence, Plaintiff's claim against Defendant Hermann will be allowed to go forward.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Brege, Melton, and Lobdell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's due process claim and request for compensatory damages against Defendant Hermann. Plaintiff's Eighth Amendment claim against Defendant Hermann remains in the case.

An order consistent with this opinion will be entered.


Dated:   April 1, 2020             /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE